FILED
**United States Court of Appeals**
**Tenth Circuit**

**May 5, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

KALIN MARIE CAMPBELL,

    Defendant - Appellant.

No. 24-5086

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:22-CR-00338-SEH-5)**
_____

Justin A. Lollman, Hofland/Lollman, Tulsa, Oklahoma, for Defendant – Appellant.

Steven J. Briden, Assistant United States Attorney (Clinton J. Johnson, United States Attorney, with him on the brief), Northern District of Oklahoma, Tulsa, Oklahoma, for Plaintiff – Appellee.
_____

Before **BACHARACH**, **MURPHY**, and **ROSSMAN**, Circuit Judges.
_____

**MURPHY**, Circuit Judge.
_____

## I.    INTRODUCTION

The defendant-appellant, Kalin Marie Campbell, appeals her sentence, challenging the district court's calculation of her Guidelines range. At issue are her prior state convictions. Campbell argues those prior state convictions were entered by

courts lacking subject matter jurisdiction, thus rendering them void. She posits the district court erred in considering these purportedly void state convictions when calculating her Criminal History Category.

Campbell's prior state convictions have not been vacated or reversed. Because her state convictions were not obtained in violation of her right to counsel, she cannot challenge the validity of those convictions in federal court during a sentencing hearing for an unrelated federal offense. *See Johnson v. United States*, 544 U.S. 295, 303 (2005). When calculating a defendant's Criminal History Category, sentencing courts are to consider sentences from any outstanding prior conviction unrelated to the instant offense. *See* U.S.S.G. §§ 4A1.1; 4A1.2 & cmt. 6. The district court did not err by considering Campbell's prior convictions when calculating her Criminal History Category. Therefore, exercising jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, the court **affirms** the judgment of the district court.

## II.    BACKGROUND

Campbell is an enrolled member of the Osage Nation. Her criminal record includes three convictions entered by various Oklahoma state courts. In 2013, Campbell was charged in Washington County for driving a motor vehicle under the influence. She pleaded guilty to multiple traffic-related charges and served 139 days in state prison. Next, in June 2016, Campbell was convicted for possessing methamphetamine and a loaded firearm while operating a vehicle in Mayes County. She served a deferred sentence. Finally, in July 2016, Campbell was convicted in Tulsa County of possession of a controlled substance and drug paraphernalia, as well

2

as false impersonation of another. For this third conviction, the state court imposed a three-year sentence. Campbell was represented by counsel in the state criminal proceedings leading to her convictions. The government does not contest that the offenses underlying all three convictions were committed within Indian country as defined in 18 U.S.C. § 1151.[1]

In 2021, law enforcement began investigating a drug trafficking organization distributing methamphetamine and heroin. Campbell was identified as one of the organization's main distributors in Tulsa. Upon a search of her home, agents from the Drug Enforcement Administration discovered various quantities of controlled substances as well as multiple firearms and ammunition. She was indicted in the Northern District of Oklahoma on a single count of conspiring to distribute controlled substances. *See* 21 U.S.C. §§ 841, 846. She pleaded guilty without entering into a plea agreement.

In its presentence investigation report ("PSR"), the U.S. Probation Office proposed an advisory Guidelines range of 360 months to life, reflecting its underlying calculation of a total offense level at 42 and a Criminal History Category of III. Campbell objected to the calculations set out in the PSR. She reasoned, inter alia, none of her prior state convictions should be factored into the calculation of her Criminal History Category because the relevant Oklahoma state courts lacked

---

[1] Campbell identifies, again without contradiction by the government, Washington County as part of the Cherokee Nation Reservation and Tulsa and Mayes Counties as parts of both the Cherokee and Muskogee (Creek) Reservations.

jurisdiction over criminal conduct of tribal citizens committed on tribal land. During the sentencing hearing, the district court overruled this objection, observing, in particular, that the state convictions at issue remained outstanding because no Oklahoma court had vacated them.

After resolving other objections not relevant to this appeal, the district court concluded the total offense level was 34 and the Criminal History Category was III,[2] resulting in an advisory Guidelines range of 188 to 235 months. Campbell was ultimately sentenced to 188 months of imprisonment, followed by five years of supervised release. She timely appealed.

## III.    DISCUSSION

"A sentence must be both procedurally and substantively reasonable." *United States v. Hanrahan*, 508 F.3d 962, 969 (10th Cir. 2007). Campbell challenges the procedural reasonableness of her sentence, arguing the district court erred in calculating her Guidelines range. *See id.* (holding that a procedurally reasonable sentence is one "calculated utilizing a legitimate method" (quotation omitted)). Because she has preserved her claim, the standard of review is abuse of discretion, under which this court reviews the district court's legal conclusions regarding the

---

[2] The district court first determined Campbell's total offense level was 39 and her Criminal History Category was III. Thereafter, the district court granted the defendant's motion for a downward variance, decreasing her total offense level to 34.

guidelines de novo and its factual findings for clear error. *United States v. Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012).

In reviewing procedural reasonableness, the court "focuses on the manner in which the sentence was calculated," *United States v. Sanchez-Leon*, 764 F.3d 1248, 1261 (10th Cir. 2014), to "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range," *Gall v. United States*, 552 U.S. 38, 51 (2007). "Any error in the Guidelines calculation renders a sentence procedurally unreasonable and, if the error is not harmless, requires remand." *United States v. Conley*, 89 F.4th 815, 820 (10th Cir. 2023).

A defendant's Criminal History Category is determined by attributing and tallying points for their prior sentences. *See* U.S.S.G. § 4A1.1; *see also id.* ch. 5, pt. A (setting out the sentencing table). The sentencing court is to consider "any sentence previously imposed upon adjudication of guilt . . . for conduct not part of the instance offense." *Id.* § 4A1.2(a)(1). Excluded from consideration are sentences resulting from convictions which have been "reversed or vacated" or "have been ruled constitutionally invalid in a prior case." *Id.* § 4A1.2 cmt. n.6; *see United States v. Maloid*, 71 F.4th 795, 805 (10th Cir. 2023) ("[Guidelines commentary] governs unless it runs afoul of the Constitution or a federal statute or is plainly erroneous or inconsistent with the guideline provision it interprets." (quotations omitted)). In this

5

case, the district court attributed six points in total for Campbell's three state convictions, classifying her Criminal History Category as III.[3]

Campbell contests this determination in three main steps. First, relying on *McGirt v. Oklahoma*, 591 U.S. 894, 898 (2020), she claims Oklahoma state courts generally lack subject matter jurisdiction over matters concerning conduct of Indian persons committed in Indian country. Applying this proposition, Campbell asserts her state convictions—having been entered by state courts for offenses she committed in Indian country—are void. Second, she argues the validity of her state convictions may be challenged during her federal sentencing hearing due to their purported jurisdictional defects. Finally, Campbell concludes the district court committed procedural error by factoring in these void state convictions when calculating her Criminal History Category.

At the first step, the defendant makes an erroneous inferential leap. *McGirt* did not, by itself, vacate or void existing state convictions. *See* 591 U.S. at 935 ("The only question before us . . . concerns the statutory definition of 'Indian country' as it applies in federal criminal law under the [Major Crimes Act]."). In fact, the Supreme Court made clear that those who, based on *McGirt*, attempt to challenge existing state convictions would be subject to the "well-known state and federal limitations on postconviction review in criminal proceedings." *Id.* at 933.

---

[3] The district court adopted the presentence investigation report which attributed 1) two points for her conviction in 2013; 2) one point for her conviction in June 2016; and 3) three points for her conviction in July 2016.

It has long been established in this court that "the issue of whether a court has proper jurisdiction is a legal one and, hence, no conviction is 'void from its inception' for lack of jurisdiction until a court with review authority has so declared." *United States v. Mayfield*, 810 F.2d 943, 946 (10th Cir. 1987). During the sentencing hearing, Campbell explained it had not been "financially feasible" for her to contest these prior convictions before the appropriate court. ROA Vol. III at 96. Subsequently, the district court observed that Campbell's state convictions had not been reversed or vacated by any Oklahoma court. ROA Vol. III at 100. Thus, regardless of the merits of her jurisdictional contentions, the court cannot conclude Campbell's prior state convictions have been rendered void.

Campbell's argument at the second step also falls short. By challenging the validity of her state convictions "in a proceeding other than a direct appeal," Campbell is raising a collateral attack. *Wall v. Kholi*, 562 U.S. 545, 552 (2011) (italics omitted). In relevant part, the Guidelines commentary provides the following:

> With respect to the current sentencing proceeding, this guideline and commentary do not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law (e.g., 21 U.S.C. § 851 expressly provides that a defendant may collaterally attack certain prior convictions).

U.S.S.G. § 4A1.2 cmt. n.6. According to Campbell, longstanding principles and policies of federal law recognize her right to raise this collateral challenge.

With the "sole exception of convictions obtained in violation of the right to counsel," the Supreme Court has recognized no constitutional right "to collaterally attack prior convictions" during federal sentencing proceedings. *Daniels v. United*

7

*States*, 532 U.S. 374, 378 (2001). *McGirt* did not expand upon this exception, *see* 591 U.S. at 935, and this court has not otherwise permitted the type of collateral challenge Campbell seeks to pursue, *see United States v. Garcia*, 42 F.3d 573, 581 (10th Cir. 1994) (identifying "collateral attack based on the complete denial of counsel" as the sole exception to the rule against collateral attacks of prior convictions in sentencing proceedings).[4] The record confirms Campbell was represented by counsel in each prior state criminal proceeding that resulted in a conviction.

Campbell cites to *Custis v. United States*, in which the Supreme Court refused to allow collateral attacks which did not rise "to the level of a jurisdictional defect resulting from the failure to appoint counsel at all." 511 U.S. 485, 496 (1994). From the quoted language, she theorizes that, in addition to convictions obtained in complete denial of counsel, judgments with jurisdictional defects may also be subject to collateral challenges. This assertion, however, is at odds with both subsequent decisions of the Supreme Court and the rationale underpinning the narrow exception to the rule prohibiting collateral challenges.

---

[4] While the Oklahoma Court of Criminal Appeals has affirmatively held *McGirt* does not apply retroactively, this court has not yet settled that question under federal law. *Compare State ex rel. Matloff v. Wallace*, 497 P.3d 686, 689 (Okla. Crim. App. 2021) ("[W]e now hold that *McGirt*. . . shall not apply retroactively to void a conviction that was final when *McGirt* was decided."), *with Pacheco v. Habti*, 62 F.4th 1233, 1246 (10th Cir. 2023) (holding "*McGirt* announced no new constitutional right" but not addressing retroactivity). Because Campbell could not challenge the validity of her state convictions in this posture even if *McGirt* did apply retroactively, we need not address, and state no opinion on, *McGirt*'s retroactivity.

In *Johnson*, a case decided more than a decade after *Custis*, the Supreme Court explicitly "recognized only one exception to th[e] rule that collateral attacks were off-limits, [which was] for challenges to state convictions allegedly obtained in violation of the right to appointed counsel." 544 U.S. at 303. *Johnson* was in keeping with *Daniels*, which similarly held that collateral attacks during federal sentencing proceedings may only be directed against state convictions obtained in complete violation of the right to counsel. *See* 532 U.S. at 378. Notably, both *Johnson*, 544 U.S. at 303, and *Daniels*, 532 U.S. at 378, relied on, but did not interpret as broadly as does Campbell, the holding of *Custis*. This court has not expanded upon the scope of *Custis* either. In *Garcia*, this court, "applying *Custis*," identified "collateral attack based on the complete denial of counsel" as the sole exception to the general rule against collateral challenges. 42 F.3d at 581.

Furthermore, Campbell's position cannot be squared with the underlying justifications for the narrow exception to the rule against collateral challenges to prior convictions in federal sentencing proceedings. *Custis* offered two considerations which militated against "extend[ing] the right to attack collaterally prior convictions . . . beyond the right to have appointed counsel." 511 U.S. at 496. These considerations were "[e]ase of administration" and "[t]he interest in promoting the finality of judgments." *Id.* at 496-97. As to the former, *Custis* explained that whereas "failure to appoint counsel at all will generally [be apparent] from the judgment . . . itself," other types of collateral challenges will likely "require sentencing courts to rummage through frequently nonexistent or difficult to obtain

state-court transcripts or records." *Id.* at 496. As to the latter, the Supreme Court expressed concern that "allowing collateral attacks would inevitably delay and impair the orderly administration of justice and deprive the state-court judgment of its normal force and effect." *Daniels*, 532 U.S. at 378 (quoting *Custis*, 511 U.S. at 497).

Although there is no discernable dispute as to the circumstances of Campbell's prior convictions, as a general matter, establishing federal jurisdiction over criminal conduct in Indian country may present complicated factual and legal issues. *See, e.g.*, *United States v. Hatley*, 153 F.4th 1112, 1123-29 (10th Cir. 2025) (addressing arguments disputing "fact of the defendant's Indian status"); *McGirt*, 591 U.S. at 899-937 (interpreting, through extensive historical and legislative analysis, the statutory definition of "Indian country" and whether the Creek Reservation could be so classified). While district courts are fully capable of assessing such fact-intensive jurisdictional claims, doing so might require meticulous review of records not so easily accessible. *See Daniels*, 532 U.S. at 379. Interest in ease of administration therefore weighs against permitting the type of collateral challenge Campbell seeks to pursue.

As for the interest in preserving finality, states retain "a strong interest in preserving the convictions it has obtained" even after the defendant has fully served the sentence. *Id.* at 379. Although Campbell has served her sentence for all three convictions, "if a state conviction were determined to be sufficiently unreliable that it could not be used to enhance a federal sentence, the State's ability to use that judgment subsequently for its own purposes would be, at the very least, greatly

undermined." *Id.* at 380. Therefore, Oklahoma, which obtained the underlying convictions, maintains "real and continuing interest in the integrity of its judgments." *Id.* Accordingly, allowing Campbell's collateral challenge would be contrary to the interest in preserving finality of state convictions.

In the end, Campbell fails to establish the sentences she served for her prior state convictions fall outside of the scope of U.S.S.G. § 4A1.2(a). The district court therefore did not err in considering her prior convictions when calculating her Criminal History Category. The resulting Guidelines range does not reflect an abuse of discretion.

## IV.    **CONCLUSION**

The district court did not abuse its discretion and its judgment is **affirmed**.